UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID JOHN HULL,                              17-CV-1299-MJR
                                              DECISION AND ORDER
            Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 8).

      Plaintiff David John Hull brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying him Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Hull's motion (Dkt. No. 11) is granted, the Commissioner's motion (Dkt. No. 14) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

      On April 21, 2014, Hull filed an application for DIB alleging disability since April 8, 2013 due to anxiety, chronic depression, sleep apnea, carpal tunnel syndrome in his left hand, and chronic lower back pain. (*See* Tr. 45, 113-14, 136).[1] Hull's application was denied on August 15, 2014 (Tr. 45-64), after which he requested a hearing before an

---

[1]     References to "Tr." are to the administrative record in this case.

Administrative Law Judge (Tr. 67-68). On July 28, 2016, Administrative Law Judge Lisa B. Martin (the "ALJ") held a video hearing from Falls Church, Virginia, at which Hull appeared with counsel and testified from Rochester, New York. (*See* Tr. 12, 26-44). On August 31, 2016, the ALJ issued her decision denying Hull's DIB claim. (Tr. 9-25). Hull requested review by the Appeals Council (Tr. 109-12), but on October 25, 2017, the Appeals Council denied Hull's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical

opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Hull's DIB claim. Under step one, the ALJ found that Hull has not engaged in substantial gainful activity since April 8, 2013, his alleged onset date. (Tr. 14). At step two, the ALJ concluded that Hull has the following severe impairments: "lumbar spine disorder, bilateral hand disorders, sleep apnea, obesity, depression and anxiety with PTSD." (*Id.*). At step three, the ALJ found that Hull does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed Hull's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of medium work as defined in [20 C.F.R. §404.1567(c)],[2] except that the claimant must avoid all ladders, ropes or scaffolds climbing, and is limited to frequent, but not constant, upper extremity reaching, handling, fingering, and feeling tasks. He must avoid all crowded work settings (e.g., movie theater type settings where crowds gather around the workstation). He must avoid all exposure to dangerous work hazards (unprotected heights and exposed moving machinery), and to extreme heat, humidity and cold. He is limited to routine, simple tasks not requiring a fast assembly quota pace, not requiring more than occasional work interactions with coworkers and supervisors, and not involving any public contact work.

(Tr. 16). Proceeding to step four, the ALJ found that Hull is unable to perform his past relevant work as a preschool teacher. (Tr. 20). At the fifth step, the ALJ considered Hull's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Hull can perform jobs that exist in significant numbers in the national economy, such as machine feeder, general laborer, small parts assembler, and

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. §404.1567(c).

inspector/hand packager. (Tr. 20-21). Accordingly, the ALJ found that Hull can successfully adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act from his alleged onset date of April 8, 2013 through the date of the ALJ's decision. (Tr. 21-22).

    IV.    *Hull's Challenge*

Hull argues, *inter alia*, that the ALJ failed to adequately develop the record and that this case should therefore be remanded. (Dkt. No. 11-1 (Hull's Memo. of Law) at 9-12). The Court agrees.

"'[T]he ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "This duty to develop the administrative record requires the ALJ to make 'every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources.'" *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (alterations in original) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). The ALJ has a duty to develop the record even where, as here, the claimant is represented by counsel. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Cancel v. Colvin*, No. 14-cv-2034(PKC), 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [plaintiff's] counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error. Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented."); *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) ("The

ALJ did not satisfy his duty to develop the record just because he told [plaintiff's] attorney to obtain the missing records."). It is incumbent upon the ALJ to develop evidence where it is apparent from the face of the record that the record lacks necessary information. *See Rodriguez v. Colvin*, No. 14-CV-214S, 2015 WL 5037014, at *4 (W.D.N.Y. Aug. 25, 2015).

Here, there is a significant gap in the medical record between June 2014 and June 2016. During that time, Hull attended biweekly therapy sessions, as well as medication sessions every three months, at the Orleans County Mental Health clinic (*see* Tr. 210, 216-30, 268, 273-79), yet there are no treatment records from these sessions in the record. In addition, Dr. Tulio Ortega, Hull's treating psychiatrist, indicates in his July 6, 2016 "Mental Residual Functional Capacity Questionnaire" that Hull received psychiatric evaluations and consults since October 1, 2014 (Tr. 273-77), but again, these treatment records are not in the record.

The Commissioner argues that there is no reason to further develop the record by securing these missing treatment records because there already exists in the record substantial evidence to support the ALJ's conclusion that Hull is not disabled. In particular, the Commissioner points to Dr. Ortega's statements in his June 29, 2016 treatment note that Hull is "doing quite well" and "continues being quite in control." (Tr. 278-79). The Court disagrees with the Commissioner's argument.

The Commissioner's regulations recognize that when evaluating mental impairments, there is a "[n]eed for longitudinal evidence." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(C)(5). This is because mental disabilities "are best diagnosed over time." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016); *see also Henley v.*

*Berryhill*, No. 17-CV-445, 2018 WL 3866670, at *5 (W.D.N.Y. Aug. 15, 2018) (same). Thus, a two-year gap in Hull's mental health records is not harmless error.

Accordingly, for the reasons stated, the Court remands this case to the Commissioner to further develop the record by obtaining and considering the missing treatment records discussed above. *See Sotososa*, 2016 WL 6517788, at *3-4 (remanding where it was "apparent" that some of the plaintiff's mental health treatment notes were missing from the record). On remand, the ALJ should also consider Hull's argument that the ALJ's RFC assessment did not adequately account for social-functioning and stress-tolerance limitations reflected in the medical opinions in the record. (Dkt. No. 11-1 (Hull's Memo. of Law) at 12-16).

## **CONCLUSION**

For the foregoing reasons, Hull's motion for judgment on the pleadings (Dkt. No. 11) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: April 22, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge